UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-cv-23329-GAYLES/Turnoff

**JAZMINE SALDANA**,

    Plaintiff,

vs.

**BIRD ROAD CAR WASH, INC.**,
*et al.*,

    Defendants.
_____/

## **ORDER**

**THIS CAUSE** came before the Court upon Defendants' Motion for Summary Judgment [ECF No. 18]. The Court has reviewed the Motion, Plaintiff's Response [ECF No. 24], Defendants' Reply [ECF No. 26], and the record. For the reasons stated below, the Motion is granted.

**I.  BACKGROUND**

Plaintiff Jazmine Saldana ("Saldana") filed this suit against Defendants Bird Road Car Wash, Inc., d/b/a Busy Bee Car Wash, a Florida profit corporation ("Busy Bee"), and James Mulholland, individually ("Mulholland"). Saldana's Amended Complaint [ECF No. 6] contains four counts: Counts I and II allege violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"); and Counts III and IV allege violations of the Florida Minimum Wage Act, Fla. Stat. § 448.110 ("FMWA").

The facts of the case are not complex. Saldana began working as a Detailer for Busy Bee in December 2014 and remains employed in that capacity. Detailers are responsible for finishing the car wash process once a vehicle exits the automated car wash tunnel, including drying,

waxing, and vacuuming the vehicle and cleaning its windows. Detailers complete this task in teams of two, with each responsible for one side of the vehicle. Upon completing the detailing work, one of the Detailers holds up a "Ready" sign, the customer approaches the Detailer to pick up the vehicle, and the customer typically hands that Detailer a cash tip. That Detailer divides the tip, giving half to the other Detailer on the team. Because Busy Bee's Detailers regularly receive tips in excess of $30 per month, Busy Bee applies a $1.70 per hour tip credit toward its minimum wage obligation for Detailers.

When Saldana was hired on December 10, 2014, she completed the new hire process with Car Wash Manager Kathy Daubert ("Daubert"), during which Daubert informed Saldana that her pay rate would be $6.23 per hour plus tips.[1] Saldana signed a W-4 document verifying this rate. During the new hire process, Daubert also informed Saldana that she would be working as part of a two-person Detailer team and that she and the other Detailer on the team would each be entitled to one-half of any cash tip left by the customer for the team. Saldana received an employee handbook and signed an acknowledgment of receipt that same day. The handbook further explained the pay rate and tip policy for Busy Bee's Detailers. Throughout Saldana's employment, Busy Bee posted the United States Department of Labor WHD Form 1088 on its bulletin board, where other employment law notices are posted in an area where Busy Bee's employees frequent. The tip credit policy is explained on that form.

The hours Saldana worked each week were accurately recorded and were reflected on her direct deposit pay stubs, which detailed the hourly pay and tip credit each week. Throughout her employment, Busy Bee paid Saldana the requisite hourly minimum wage of $6.23 for 2014 and $6.35 thereafter. Because customers pay Detailers in cash, Busy Bee relies on its Detailers to

---

[1] In January 2015 Saldana's pay rate was increased to $6.35 per hour plus tips in accordance with Florida's minimum wage increase.

report their tips. To ensure that its Detailers received sufficient tips to cover the $1.70 hourly tip credit, Busy Bee prepared a weekly tip sheet, which listed the Detailers' hours for that week and the amount of tips necessary to cover the tip credit for those hours. On payday, Saldana received the tip sheet and certified whether or not she had received the tips necessary to cover the tip credit. Saldana has certified that she received sufficient tips to cover the tip credit for each workweek.

On five to ten occasions, Saldana worked on a Detailer team that included a Manager who was substituting for an absent Detailer. The Manager worked as a Detailer with Saldana to staff the two-person Detailer team and perform one-half of the detail work as would have a regular Busy Bee Detailer. As with the practice outlined above, one-half of each customer's tip went to each member of the Detailer team—half to Saldana and half to the Manager working as a Detailer. Saldana did not "share" her half of the customer's tip with any other Busy Bee employees. *See* [ECF No. 24-1 at 72:13–72:21].

Saldana works an average of thirty-seven hours per week. On the occasions when Saldana worked more than forty hours in a week, Busy Bee paid Saldana overtime.

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

A "genuine" issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## III. ANALYSIS

The issue before the Court is whether Defendants paid Saldana at least minimum wage as required by law.[2] Under the FLSA, every employer must pay its employees a minimum wage. 26 U.S.C. § 206(a). Employers are permitted to pay a reduced minimum wage for tipped employees. *See* 29 C.F.R. § 531.50 *et seq.* A "tipped employee" is one who "customarily and regularly receives more than $30 a month in tips." 26 U.S.C. § 203(t); *see* 29 C.F.R. § 531.50. Employers

---

[2] The other issue briefed by Defendants in their motion regards any overtime claims made my Saldana. It is unclear from the Amended Complaint whether Saldana is seeking compensation for alleged breach of overtime pay. However, to the extent Saldana alleges any violation of overtime pay in her Amended Complaint [ECF No. 6 at ¶ 20], the record shows, and Saldana herself concedes, that Saldana was paid time and one-half in accordance with the FLSA for the times she worked more than forty hours in one week. *See* [ECF No. 24-1 at 80:11–22]; *see also* 29 C.F.R. § 778.107 (providing "that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed"). Saldana is mistaken to assert that the law entitles her to be paid double for overtime. *See* [ECF No. 24-1 at 81:23–82:2].

can factor the employee's tips into the calculation of the employee's wages. *See* 26 U.S.C. § 203(m); 29 C.F.R. § 531.51. "The difference between the standard minimum wage and the reduced minimum wage paid to tipped employees is known as the 'tip credit.'" *Goldin v. Boce Grp., L.C.*, 773 F. Supp. 2d 1376, 1377–78 (S.D. Fla. 2011).

The employer "bears the burden of establishing that it is entitled to claim the 'tip credit.'" *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)). An employer is permitted to apply a "tip credit" only if it satisfies two requirements: (1) the tipped employee must be informed of the tip credit practice and (2) the employee must retain all the tips she receives; the employee will be deemed to retain her tips even if she participates in a valid tip pooling arrangement that is limited to those employees who "customarily and regularly receive tips." 29 U.S.C. § 203(m); 29 C.F.R. § 531.59. "If an employer fails to satisfy either of these preconditions, the tip credit may not be claimed, regardless of whether employees suffered actual economic harm as a result." *Garcia v. Koning Restaurants Int'l, L.C.*, No. 12-CV-23629, 2013 WL 8150984, at *4 (S.D. Fla. May 10, 2013) (citation and internal quotation marks omitted).

"To give sufficient notice of section 203(m), an employer must inform its employees **either verbally or in writing**" of its intention to apply the tip credit to satisfy the minimum wage obligations. *Id.* (emphasis added) (citing *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1310 (S.D. Fla. 2007), *aff'd*, 291 F. App'x 310 (11th Cir. 2008)). Courts in this district have found the notice requirement satisfied where employers provided employees with written materials explaining the tip policy, where employers verbally informed employees of the policy, and where employers prominently displaying a Department of Labor poster explaining the tip credit in an area frequented by employees. *See id.*; *see Pellon*, 528 F. Supp. 2d at 1310.

5

Here, Saldana received notice of Busy Bee's tip credit practice under 29 U.S.C. § 203(m) in at least three ways. First, Saldana received the employee handbook, which she acknowledged receiving by signing a form during her orientation on December 10, 2014, with the following language: "This acknowledges that I have received and reviewed this copy of the Busy Bee Car Wash handbook." [ECF No. 24-1 at 18]. *Cf. United States v. Goldin*, No. 95-0158-RV, 1996 WL 294366, at *9 (S.D. Ala. May 5, 1996) (finding that an employee's signature acknowledged receipt of an employee handbook on the date of her employment despite the fact that the employee could not remember having received the handbook). The handbook explained that the hourly rate is made up of two components "to equal the current minimum wage per hour." [ECF No. 20-2 at 12]. Second, Busy Bee displayed the United States Department of Labor WHD Form 1088 on the bulletin board in the employee workroom. This form explains the tip credit procedure. [ECF No. 20-1 at 131]. And third, Busy Bee manager Daubert verbally informed Saldana of the tip credit wage practice during Saldana's orientation on December 10, 2014. Any combination of these methods of notice would be sufficient for the Court to find that Busy Bee adequately informed Saldana of its intent to utilize the tip credit as the poster alone may not be sufficient to claim the tip credit. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 289–90 (S.D.N.Y. 2011) ("A generic government poster could inform employees that minimum wage obligations exist, but could not possibly inform employees that their employers intend to take the tip credit with respect to their salary."); *see also Pellon*, 528 F. Supp. 2d at 1310–11 (stating that "a prominently displayed poster using language approved by the Department of Labor to explain 29 U.S.C. § 203(m) is sufficient notice" when employees were orally informed that their salary was calculated partially on the basis of tips). Therefore, combined with either Saldana's signed acknowledgment of receiving the handbook or Daubert's verbal explanation of

the tip credit wage practice, the Court finds that the record is clear that Saldana received the requisite notice for Busy Bee to claim the tip credit under the FLSA. *See Pellon*, 528 F. Supp. 2d at 1310 ("Employers do not have to 'explain' the tip credit to employees, however; it is enough to 'inform' them of it.") (quoting *Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048(GEL), 2006 WL 851749, at *19 (S.D.N.Y.2006)).

Saldana's argument that she did not always retain her tips in violation of 29 U.S.C. § 203(m) also fails. The allegedly illicit practice described by Saldana pertains to the several instances in which she formed a two-person Detailer team with a Busy Bee Manager when another regular Detailer was not present. Saldana argues that because Managers do not regularly receive tips, Busy Bee improperly pooled her tips with those of a Manager in violation of § 203(m).

The FLSA allows for "the pooling of tips among employees who customarily and regularly receive tips." *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59. "[I]n ordinary usage, the verb 'pool,' the root of 'pooling,' means 'to contribute to a pool, or common fund; make a common interest or form a pool (of).'" *Ford v. Lehigh Valley Rest. Grp., Inc.*, No. 3:14CV227, 2014 WL 3385128, at *3 (M.D. Pa. July 9, 2014) (quoting *Webster's New World Dictionary* 1049 (3d ed. 1988)). A tip pool can be generally understood as a "tip-redistribution agreement[]." *See Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 578, 580–81 (9th Cir. 2010) (describing a "tip pool" that "redistributes" some of the wait staff's tips to the kitchen staff); *see also Austin v. Colonial Williamsburg Hotel Props., Inc.*, No. 4:95CV130, 1996 WL 406671, at *1 (E.D. Va. June 14, 1996) ("By agreement there is also a tip pooling arrangement requiring that the waiter tip out 10% of the cost of the wine to the wine runner."); *Palacios v. Hartman & Tyner, Inc.*, No. 13-CIV-61541, 2014 WL 7152745, at *1 (S.D. Fla. Dec. 15, 2014) ("Plaintiffs

were required to contribute 10% of their tips to a 'tip pool,' which is shared with other poker dealers and poker room employees, including hosts and hostesses, chip runners, floor representatives, and cashiers."); *Turner v. Millennium Park Joint Venture, LLC*, 767 F. Supp. 2d 951, 952 (N.D. Ill. 2011) ("Servers contributed a portion of the tips they received, calculated on the basis of a predetermined percentage of sales, to [the] tip pool."); *Portales v. MBA Inv. Co., LLC*, No. 3:13CV00001, 2014 WL 5795206, at *1–2 (N.D. Ohio Oct. 16, 2014) ("[The tip pool policy, which is not written, requires servers to share tips with the hibachi chefs, sushi chefs, bartenders, and bussers."); *cf.* 29 C.F.R. § 531.54 (describing tip pooling as "tip splitting, as where waiters give a portion of their tips to the busboys" or "whereby the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves").

"If an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit." *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 189 (5th Cir. 2015); *see also Strange v. Wade*, No. 1:09-CV-00316, 2010 WL 3522410, at *6 (S.D. Ohio Sept. 8, 2010) ("Where employers participate in a tip pool, the pool is invalid."). "Thus, the effect of the language of [§ 203(m)] precludes an agreement between an employer and a 'tipped employee' that any part of tips received by such employee belongs to the employer and must be turned over to the employer." *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998) (citation and internal quotation marks omitted). "Courts have interpreted this requirement to mean that an employer is not eligible to take the tip credit, and will be liable for reimbursing an employee the full minimum wage that employee would have earned, if the employer exercises control over a portion of the employee's tips." *Id.*; *see Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467–68 (5th Cir. 1979) (finding that

waiters were entitled to full minimum wage from their employer where they were not allowed to retain all the tips they received); *Wright v. U-Let-Us Skycap Servs., Inc.*, 648 F. Supp. 1216, 1217–18 (D. Colo. 1986) (finding a "blatant contravention" of § 203(m) where the tip agreement provided that the employees turned over all tips and were reimbursed by the employer only in an amount equal to the minimum wage); *Brennan v. Haulover Shark & Tarpon Club, Inc.*, No. 74-1276-CIV., 1986 WL 587, at *16 (S.D. Fla. Jan. 27, 1986) (finding that the employer was not entitled to claim the tip credit pursuant to § 203(m) where the employees did not retain all of their tips but rather had to contribute a percentage of the tips to a "vacation fund").

Here, the Court finds that Busy Bee's arrangement for tips of its Detailers is not properly understood as a tip pooling arrangement. *See* [ECF No. 20-1 at ¶ 10]. Detailers do not share their tips with any other employees, but are entitled to their half of the tip left by the customer. [*Id.*]. Any filling in by a Manager on a Detailer team has no impact on the regular Detailer's receipt of the tips to which she is entitled (*i.e.*, one-half of the customer tip to the two-member Detailer team). [*Id.*]. Saldana kept the tips to which she was entitled, and she did not share her portion of the tips with other Busy Bee employees. [ECF No. 24-1 at 72:13–72:21]. The only times Saldana alleges that she "split her tips with a manager" were when the manager acted as a member of her Detailer team; and on those few occasions, that two-person team split the tips 50/50 as usual. [*Id.* at 62:18–62:5]. This does not, however, constitute splitting her tips. Therefore, Saldana's argument that she was forced to improperly share her tips with a Manager on 5 to 10 occasions is not persuasive. There was no "pooling" of tips as traditionally understood under the FLSA. Rather, Saldana immediately retained the 50% of the customer's tip to which she was entitled for having detailed one-half of the customer's vehicle, and she retained that 50% either via the change machine on the premises or by exchanging bills already in the detailer's possession. *See*

[ECF No. 24-2 at 29:19–30:2].

Therefore, Saldana received half the tip for half the Detailer work consistent with Busy Bee's policy and in full compliance with § 203(m). Even so, Saldana is seeking a judicially sanctioned windfall by requesting funds that she would not ordinarily be entitled to receive. The fact that a Manager occasionally had to fill in as the other member of her two-person Detailer team did not transform the arrangement into a forbidden manager-participating tip pool in violation of the tip credit requirements of the FLSA.

## IV.   CONCLUSION

Because Defendants have met the burden of establishing their entitlement to claim the tip credit under 29 U.S.C. § 203(m), *see Ash*, 676 F. Supp. 2d at 1369, and because Saldana acknowledges that she received sufficient tips under the tip credit system to satisfy minimum wage requirements under both state and federal law, [ECF No. 24-1 at 72:6–72:21], the Court finds that Defendants are entitled to summary judgment on all claims. It is accordingly

**ORDERED AND ADJUDGED** that

1. Defendants' Motion for Summary Judgment [**ECF No. 18**] is **GRANTED.**
2. This case is **CLOSED** for administrative purposes, and any pending motions are **DENIED as moot**.
3. Pursuant to Federal Rule of Civil Procedure 58, final judgment shall be entered separately.

**DONE AND ORDERED** in Chambers at Miami, Florida this 30th day of September, 2016.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge Turnoff
All Counsel of Record